Citation Nr: 1825338 
Decision Date: 04/26/18 Archive Date: 05/07/18

DOCKET NO. 14-37 984 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Decatur, Georgia


THE ISSUES

1. Entitlement to service connection for a bilateral knee disability.

2. Entitlement to service connection for a right hip disability.

3. Entitlement to service connection for a lumbar spine disability.

4. Entitlement to service connection for sinusitis.

5. Entitlement to service connection for a respiratory disability, to include bronchitis and asthma.

6. Entitlement to service connection for stroke residuals.

7. Entitlement to service connection for migraines.

8. Entitlement to service connection for a foot disability.

9. Entitlement to service connection for ovarian cysts.

ORDER

The claim of entitlement to service connection for a foot disability, is dismissed.

The claim of entitlement to service connection for ovarian cysts, is dismissed.


FINDING OF FACT

During the April 2017 Board hearing, the Veteran withdrew her claims of entitlement to service connection for a foot disability and ovarian cysts.


CONCLUSIONS OF LAW

1. The criteria are met for withdrawal of the appeal concerning entitlement to service connection for a foot disability. 38 U.S.C. § 7105 (2012); 38 C.F.R. § 20.204 (2017).

2. The criteria are met for withdrawal of the appeal concerning entitlement to service connection for ovarian cysts. 38 U.S.C. § 7105 (2012); 38 C.F.R. § 20.204 (2017).


REASONS AND BASES FOR FINDING AND CONCLUSIONS

The Veteran served on active duty from August 1990 to July 1991. She also served with the Army Reserves, although the character and dates of her Army Reserve service have not yet been verified. 

This case comes before the Board of Veterans' Appeals (Board) on appeal from a June 2012 rating decision issued by the Department of Veterans Affairs (VA) Atlanta Regional Office (RO) in Decatur, Georgia. The Veteran provided testimony during a Board hearing before the undersigned in April 2017.

I. Withdrawal of Claims 

According to 38 U.S.C. § 7105, the Board may dismiss any appeal that fails to allege specific error of fact or law in the determination being appealed. Withdrawal of an appeal may be made by the appellant or by his or her authorized representative. 38 C.F.R. § 20.204(a). During the April 2017 Board hearing, the Veteran and her representative unambiguously withdrew the Veteran's claims of entitlement to service connection for a foot disability and ovarian cysts. Therefore, a "case or controversy" with respect to the issues articulated above does not exist. See Shoen v. Brown, 6 Vet. App. 456, 457 (1994) (quoting Waterhouse v. Principi, 3 Vet. App. 473 (1992)). Accordingly, these matters are dismissed. 


REMAND

Stroke Residuals

The Veteran asserts that she suffers from stroke residuals due to a stroke that occurred during a period of Army Reserve Service in 1998. However, while medical records from this period have been associated with the claims file, the Veteran's periods of ACDUTRA and inactive duty for training (INACDUTRA) have not been verified. All periods of ACDUTRA or INACDUTRA must be verified before the Board can determine whether service connection is warranted for a disability that is attributed to Army Reserve service. As such, this issue must be remanded so that appropriate attempts can be made to verify any and all periods of ACDUTRA or INACDUTRA during the Veteran's period of Army Reserve service.

Additionally, the Veteran was afforded a VA examination in March 2012. The examiner found that there were no residuals from the Veteran's stroke. An etiology opinion was not provided. The Veteran has testified that she suffers from tremors as related to residuals from her stroke. A July 2010 private treatment record reflects the Veteran's report of a mild tremor with use of her hands bilaterally. A probable diagnosis of benign essential tremor was given. An April 2011 private treatment record reflects the Veteran's report of an increase in her tremors. She stated that they came and went and occurred more when using her hands. It was noted that at her prior visit, the Veteran and her provider discussed increasing her prescribed medication of topiramate. The Veteran has also provided a May 2017 letter from private treating physician, Dr. S. H., stating that the Veteran is followed in her general neurology clinic for tremors and the 1998 stroke. Therefore, it is necessary to remand for a VA examination to determine if the Veteran currently has a disability manifested by tremors that is causally related to the Veteran's 1998 stroke, assuming that such occurred during a period of ACDUTRA service.

Bilateral Knee, Right Hip, Lumbar Spine, Sinusitis, Migraine, and Respiratory Disabilities 

The Veteran asserts that she currently suffers from the above disabilities, which were incurred during her active duty service. The Veteran has testified that her bilateral knee and right hip disabilities resulted from the cumulative effects of her in-service physical duties. She has further testified that she first began experiencing symptoms of sinusitis, migraines, and bronchitis and asthma in service.

The Veteran was afforded March 2012 VA examinations, which revealed diagnoses of bilateral knee degenerative joint disease, right hip bursitis, lumbar sprain, chronic sinusitis, migraine including migraine variants, and chronic bronchitis. An etiology opinion, dated in June 2012, was only provided as to the Veteran's lumbar spine disability. The examiner opined that the Veteran's lumbar spine disability was less likely than not incurred in or caused by the claimed in-service injury, event, or illness. The examiner reasoned that the Veteran's current lumbar strain condition was unrelated to the mild paralumbar strain that was diagnosed in October 1990 as a mild paralumbar strain is most commonly an acute event that is unlikely to cause chronic sequela, especially as there are no records of back complaints or evidence of back progression; thus, it is less likely to have incurred or caused the current lumbar strain. The Veteran has testified to suffering continuous back pain since service and self-treating her pain with Ibuprofen and muscle relaxants. She also testified that she has had to take a lot of time off of work while undergoing private treatment. As the examiner did not consider the Veteran's lay statements regarding a continuity of symptomatology since service (and apparently only considered continuity of documented treatment), a new opinion is necessary that addresses the Veteran's contentions.

In this same regard, VA opinions have not been obtained that address the etiology of the Veteran's claimed bilateral knee, right hip, sinusitis, respiratory , and migraine conditions. In light of the evidence discussed above, the Board finds that the low threshold for obtaining VA examinations in this case has been met and therefore a remand is necessary in order to afford the Veteran VA examinations of her claimed disabilities. See 38 U.S.C. § 5103A (d) (2012); McLendon v. Nicholson, 20 Vet App. 79, 81 (2006).

Additionally, the Veteran testified that she recently began receiving treatment through a VA medical center (VAMC) for bronchitis and asthma. However, there are no VAMC treatment records associated with the claims file. Therefore, remand is also required to obtain and associate with the claims file any outstanding VA treatment records regarding the Veteran.

Accordingly, the case is REMANDED for the following action:

1. Obtain any outstanding VA treatment records.

2. Contact the Veteran's Army Reserve unit or other appropriate entity and request that it provide the exact dates of the Veteran's periods of ACDUTRA and INACDUTRA. A summary of these dates must be clearly set forth in the record.

3. Thereafter, schedule the Veteran for a VA examination to determine the nature and etiology of the Veteran's claimed stroke residuals. The examiner should answer the following questions:
a) Identify all current disabilities associated with the Veteran's stroke in 1998, to include any disability manifested by tremors. 

b) For all identified disabilities, is it at least as likely as not (a 50 percent probability or greater) that the disability was caused by the Veteran's active duty or the 1998 stroke?

In so opining, the examiner should address the July 2010 private treatment record noting the Veteran's report of a mild tremor with use of her hands bilaterally and the April 2011 private treatment record noting the Veteran's report of an increase in her tremors and prior discussion with her provider to increase her prescribed medication of topiramate. 

The examiner is advised that the Veteran is competent to report her symptoms and history, and such reports must be specifically acknowledged and considered in formulating any opinions.

The examiner is reminded that the mere absence of documented treatment cannot, alone, be used to disregard the Veteran's complaints as to symptoms during and after service.

4. Schedule the Veteran for a VA examination to determine the etiology of the Veteran's bilateral knee disability.

The examiner should diagnose any current knee disability. For each disability diagnosed, the examiner should opine as to whether the Veteran's bilateral knee disability is at least as likely as not (a 50 percent probability or greater) caused by or etiologically related to active duty, to include falling on rough sands, hiking, and other physical duties in service.

In so opining, the examiner should address the Veteran's lay statements that she had symptoms of bilateral knee disability during her time in service.

The examiner is advised that the Veteran is competent to report her symptoms and history, and such reports must be specifically acknowledged and considered in formulating any opinions.

The examiner is reminded that the mere absence of documented treatment cannot, alone, be used to disregard the Veteran's complaints as to symptoms during and after service.

5. Schedule the Veteran for a VA examination to determine the etiology of the Veteran's right hip disability.

The examiner should diagnose any current disability of the right hip. For each disability diagnosed, the examiner should opine as to whether the Veteran's right hip disability is at least as likely as not (a 50 percent probability or greater) caused by or etiologically related to active duty, to include falling on rough sands, hiking, and other physical duties in service.

The examiner is advised that the Veteran is competent to report her symptoms and history, and such reports must be specifically acknowledged and considered in formulating any opinions.

The examiner is reminded that the mere absence of documented treatment cannot, alone, be used to disregard the Veteran's complaints as to symptoms during and after service.

6. Schedule the Veteran for a VA examination to determine the etiology of the Veteran's lumbar spine disability.

The examiner should diagnose all current lumbar spine disabilities. For each disability diagnosed, the examiner should opine as to whether the Veteran's lumbar spine disability is at least as likely as not (a 50 percent probability or greater) caused by or etiologically related to active duty, to include the October 1990 mild paralumbar strain.

In so opining, the examiner should address the Veteran's lay statements that she has had back pain and issues with her back since service.

The examiner is advised that the Veteran is competent to report her symptoms and history, and such reports must be specifically acknowledged and considered in formulating any opinions.

The examiner is reminded that the mere absence of documented treatment cannot, alone, be used to disregard the Veteran's complaints as to symptoms during and after service.

7. Schedule the Veteran for a VA examination to determine the etiology of the Veteran's sinusitis disability.

The examiner should opine as to whether the Veteran's sinusitis disability is at least as likely as not (a 50 percent probability or greater) caused by or etiologically related to active duty.

The examiner is advised that the Veteran is competent to report her symptoms and history, and such reports must be specifically acknowledged and considered in formulating any opinions.

The examiner is reminded that the mere absence of documented treatment cannot, alone, be used to disregard the Veteran's complaints as to symptoms during and after service.

8. Schedule the Veteran for a VA examination to determine the etiology of any respiratory disability, to include bronchitis and asthma.

The examiner should opine as to whether the Veteran has a respiratory disability, to include bronchitis and asthma, that is at least as likely as not (a 50 percent probability or greater) caused by or etiologically related to active duty.

In so opining, the examiner should address a February 2010 private treatment record noting a history of asthma and bronchitis diagnoses, as well as the March 2012 VA examination report noting a diagnosis of chronic bronchitis. 

The examiner is advised that the Veteran is competent to report her symptoms and history, and such reports must be specifically acknowledged and considered in formulating any opinions.

The examiner is reminded that the mere absence of documented treatment cannot, alone, be used to disregard the Veteran's complaints as to symptoms during and after service.

9. Schedule the Veteran for a VA examination to determine the etiology of the Veteran's migraines.

The examiner should opine as to whether the Veteran's migraines are at least as likely as not (a 50 percent probability or greater) caused by or etiologically related to active duty.

The examiner is advised that the Veteran is competent to report her symptoms and history, and such reports must be specifically acknowledged and considered in formulating any opinions.

The examiner is reminded that the mere absence of documented treatment cannot, alone, be used to disregard the Veteran's complaints as to symptoms during and after service.

10. Finally, readjudicate the appeal. If any of the benefits sought remain denied, issue a supplemental statement of the case and return the case to the Board.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).



______________________________________________
M. HYLAND
Veterans Law Judge, Board of Veterans' Appeals

ATTORNEY FOR THE BOARD S. Gordon, Associate Counsel
 
Copy mailed to: Georgia Department of Veterans Services 

Department of Veterans Affairs